UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM LEE GRAHAM,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

Defendant.

Case No. 3:13-cv-05300-KLS

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On December 30, 2009, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that he became disabled beginning May 1, 2007, due to left hip and right ankle problems. See ECF #13, Administrative Record ("AR") 19, 196. Both applications were denied upon initial administrative review on March 9,

2010, and on reconsideration on September 2, 2010. See AR 19. A hearing was held before an administrative law judge ("ALJ") on September 22, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness and a vocational expert. See AR 33-90.

In a decision dated October 13, 2011, the ALJ determined plaintiff to be not disabled. See AR 19-27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 14, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481. On May 6, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #4. The administrative record was filed with the Court on August 2, 2013. See ECF #13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits or in the alternative for further administrative proceedings, because the ALJ erred: (1) in finding that none of plaintiff's impairments met or medically equaled the criteria contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"); (2) in rejecting plaintiff's subjective complaints; and (3) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds defendant's decision to deny benefits should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler,

785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I. The ALJ's Step Three Determination

At step three of the sequential disability evaluation process, the ALJ must evaluate the

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2dat 1119 n.10.

claimant's impairments to see if they meet or medically equal any of the impairments listed in the Listings. See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. See Tacket, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also Social Secuirty Ruling ("SSR") 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original). However, "symptoms alone" will not justify a finding of equivalence. Id. The ALJ also "is not required to discuss the combined effects of a

claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

The ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any of those contained in the Listings. See AR 22. The ALJ further specifically found that plaintiff's impairments "does not meet or equal listing 1.02 'A' because there is no gross anatomical deformity" or "listing 1.04 because [plaintiff's] spine disorder does not cause compromise of a nerve root or spinal cord." Id. In so finding in regard to Listing 1.04, plaintiff argues the ALJ erred by only considering Subsection "A" of Listing 1.04 and not the other subsections thereof, because that subsection deals with "[e]vidence of nerve root compression." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

As pointed out by defendant, however, Listing 1.04 requires that the claimant have a disorder of the spine "resulting in compromise of a nerve root." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. In other words, to establish that he meets any of the three subsections of Listing 1.04, plaintiff must show not only that he meets the specific criteria thereof, *but also* that the particular

spine disorder described therein has compromised a nerve root. See id. Further, plaintiff has not pointed to any medical evidence in the record that he has a spine disorder that resulted in nerve root compromise or that otherwise medically equals the criteria of any of Listing 1.04. The ALJ, accordingly, did not err in finding plaintiff did not satisfy the criteria thereof.[2]

III. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless

[2] It should also be noted that plaintiff's assertion to the contrary notwithstanding, even though the record shows he has been diagnosed with spinal stenosis, it does not show that impairment has resulted in either pseudoclaudication or "an inability to ambulate effectively, as defined in [20 C.F.R. Part 404, Subpart P, Appendix 1, §] 1.00B2b," as required by subsection "C" of Listing 1.04. Plaintiff points out that pseudoclaudication "is manifested by pain and weakness and may impair ambulation" (ECF #15, p. 9 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00K3), but he points to no evidence in the record that any medical source has found pseudoclaudication to be present (see 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C ("[P]seudoclaudication [must be] established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness."). Further, while plaintiff asserts he "has a long and well documented history of walking in a forward flexed position with an antalgic gait," and "a well documented history of low back pain with weakness" that impairs his ability to ambulate effectively, again the record fails to show plaintiff is unable to ambulate effectively as defined in the Listings. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(1) (defining "[i]neffective ambulation" as "generally . . . having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities").

affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case found plaintiff to be not fully credible concerning his allegations of disability and subjective complaints for a number of reasons, all of which the Court finds to be proper. For example, the ALJ found those allegations and complaints to be inconsistent with the medical evidence in the record. See AR 23-24; Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (ALJ's determination that subjective complaints are inconsistent with medical evidence can satisfy clear and convincing requirement). The ALJ also noted that despite claims of inability to sit comfortably for more than 10 minutes or stand for very long (see AR 23), plaintiff "sat through the entire [hearing] proceedings" and "was observed sitting without standing during a 90-minute interview" by one of his treating physicians (AR 24). See Smolen, 80 F.3d at 1284 (ALJ may consider observations of physicians regarding nature, onset, duration and frequency of claimant's symptoms); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986) (ALJ's inclusion of personal observations of claimant in his or her decision "does not render the decision improper"). Plaintiff does not offer any specific challenge to these asserted bases for

discounting his credibility, and therefore has waived any objection thereto.[3]

The ALJ further pointed to evidence of potential symptom exaggeration in the record, including the comments of his own treating physician. See AR 24; Tonapetyan, 242 F.3d at 1148 (ALJ properly discredited claimant's testimony in part based on "her tendency to exaggerate"). Plaintiff argues that physician's "suspicions were somewhat disproved" by subsequent diagnostic imaging that showed "longstanding evidence of radiculopathy not improved with surgery" (ECF #15, p. 10), but does not explain how this actually disproves his physician's observations that his complaints appeared to be out of proportion to the clinical findings. Indeed, plaintiff himself acknowledges that the physician's suspicions are at most only "somewhat" disproved. Plaintiff also asserts that no other medical provider has questioned the veracity of his complaints, but this does not necessarily mean that the evidence of symptom exaggeration that is in the record is not credible, particularly since it comes at least in part from his treating physician.

Other valid reasons for discounting plaintiff's credibility were provided by the ALJ, none of which again have been specifically challenged by plaintiff, including not fully reporting illicit drug use to medical providers, failing to comply with recommendations to stop smoking even though it could increase his perception of pain and impair healing, and providing inconsistent statements concerning his activities of daily living. See AR 24; Smolen, 80 F.3d at 1284 (ALJ may consider inconsistent statements and other testimony that "appears less than candid"); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not following prescribed course of treatment can cast doubt on claimant's credibility). Accordingly, plaintiff failed to show the ALJ improperly found him to be not fully credible.

[3] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

VII. The ALJ's Findings at Step Five

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform sedentary work . . . except: [he] must have the option to sit or stand every 30 minutes; only occasional climbing, balancing, or stooping; no kneeling, crouching, crawling, or climbing of ropes, ladders, or scaffolds; avoidance of concentrated exposure to extreme cold and hazards such as machinery and heights.**

AR 22 (emphasis in original). If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational

expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 81. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 81-82. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 26-27.

Plaintiff argues the ALJ's step five determination is not supported by substantial evidence, because the hypothetical question the ALJ posed to the vocational expert failed to take into account the effect of his pain and his inability to ambulate. But as discussed above, the ALJ did not err in finding none of plaintiff's impairments met or medically equaled the criteria of Listing 1.04, including the criteria of Listing 1.04C which requires objective medical evidence of inability to ambulate. Also as discussed above, the ALJ did not err in discounting plaintiff's

credibility concerning his subjective complaints, and plaintiff fails to point to clinical findings in the medical evidence that would support greater limitations due to pain.

Plaintiff does assert the ALJ improperly rejected the functional limitations assessed by Emily Rae Singh, M.D., but again fails to provide any specific argument as to why the reasons the ALJ gave for rejecting them are improper. See AR 25.[4] Plaintiff also asserts the ALJ "ignored the medical opinions" in the record that surgery "did not result in improved function." ECF #15, p. 11. The ALJ, though, did acknowledge the reported lack of improvement plaintiff experienced (see AR 23), but as discussed above did not err in finding him to be not fully credible regarding his symptoms. As also noted by the ALJ, furthermore, despite the reported lack of improvement, plaintiff's own treating physician suspected he may have exaggerated his symptoms ,and "encouraged [him] to increase his activity level." AR 24. As such, to the extent the ALJ committed any error by not giving greater attention to the issue of lack of improvement, the Court finds that error to be harmless.[5]

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded

---

[4] With respect to Dr. Singh's assessment, the ALJ stated:

> I give little weight to Emily Singh's opinions that the claimant is severely limited in sitting, standing, walking and incapable of even sedentary work (Exhibit 8F/3). Despite the claimant's history of ankle surgery Dr. Singh failed to record findings of the ankles flexion or extension on the Range of Joint Motion Evaluation Chart (Exhibit 8F/5-6). The [state agency] Physical Evaluation defines severely limited as "unable to lift at least 2 pounds or unable to stand and/or walk" (Exhibit 8F/3). However, Dr. Singh notes that the claimant is able to stand and walk with an antalgic gait (Exhibit 8F/2). Dr. Singh does not give a clear basis for concluding that the claimant is unable to lift even two pounds (Exhibit 8F/3 and 8F/9). Furthermore, Dr. Singh's opinions are not supported by the opinions of Dr. [Alnoor] Virji, Dr. [Robert] Hoskins, Dr. [Stephen C.] Sorsby, or Dr. [Darrell] Weinman.

Id.; see also Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ need not accept opinion of even treating physician if inadequately supported by clinical findings or "the record as a whole").

[5] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 31st day of March, 2014.

Karen L. Strombom
United States Magistrate Judge